Below is an opinion of the court.

TERESA H. PEARSON
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 22-31202-thp13 |
| JOHN FRANKLIN FRYSINGER, | OPINION[1] |
| Debtor(s). | |

This matter came before the court for determination of whether John Franklin Frysinger is eligible to be a debtor under Chapter 13. The court issued its oral ruling determining Mr. Frysinger is eligible at the hearing on November 3, 2022, and submits this written opinion to memorialize the basis for the court's decision.

## Jurisdiction

This court has jurisdiction of this case under 28 U.S.C. § 1334, and authority to decide this issue as a core proceeding under 28 U.S.C. § 157(b)(2).

## Facts

The facts relevant to the determination of eligibility are undisputed. Mr. Frysinger filed his voluntary petition under Chapter 13 on July 26, 2022. He filed his bankruptcy schedules, statement of financial affairs, and initial Chapter 13 plan on August 8,

---

[1] The active judges of the district approve this opinion.

2022. The only sources of income that Mr. Frysinger listed on his Schedule I were distributions of $3,800 per month from a personal injury settlement, and proposed income of $200 per month from miscellaneous sales. At the time of filing, Mr. Frysinger was not employed, and did not receive unemployment compensation or other government assistance.

Creditor Shannon Legg, who is Mr. Frysinger's ex-wife, filed a timely objection to the plan. Among other things, Ms. Legg raised concerns that Mr. Frysinger did not have sufficient income to fund a plan.

Through the briefing on the plan objection, it became clear that before Mr. Frysinger filed his bankruptcy petition, he already received all the personal injury settlement distributions he was entitled to receive. The funds remaining from what he received prepetition were held in a bank account disclosed on his Schedule B and exempted on his Schedule C. Mr. Frysinger was not entitled to receive any payments from the personal injury settlement post-petition.

At the initial confirmation hearing, it appeared to the court that the debtor was not an individual with regular income and may not be eligible to be a debtor under Chapter 13. The court asked the parties to brief the issue of eligibility.

In his briefing, Mr. Frysinger asserted that he intended to use his bank account holding the personal injury proceeds to fund his case, and, when those funds were exhausted, he committed to withdraw funds from his Individual Retirement Accounts (IRAs) to pay his monthly plan payments. Mr. Frysinger had scheduled several IRAs, holding approximately $67,800, on his Schedule B, and he exempted those accounts on his Schedule C. Although withdrawals from the IRAs were not listed as a source of income on his Schedule I, Mr. Frysinger filed a declaration saying that he intended to use withdrawals from his IRAs to pay his chapter 13 plan payment and ongoing monthly expenses until he finds regular employment. During oral argument on eligibility, Mr. Frysinger expressed his intent to amend his Schedule I to show withdrawals from his IRAs as a source of income. Mr. Frysinger is 60 years old and can withdraw funds from his IRAs without incurring a tax penalty.

## Issue

Is Mr. Frysinger eligible to be a debtor under Chapter 13, where his asserted income derives only from (a) bank account holding funds received prepetition from a personal injury settlement, (b) future sales of property, and (c) withdrawals from his IRAs?

## Legal Analysis

The analysis of eligibility starts by considering the plain language of the Bankruptcy Code.[2] The Code states in relevant part that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated debts of less than $2,750,000 . . . may be a debtor under chapter 13 of this title."[3] The Code defines the term 'individual with regular income' to mean an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker."[4]

The term 'income' is not defined in the Bankruptcy Code. Where the Code does not define a term, the court must look to its ordinary meaning.[5] Webster's Third New International Dictionary (Unabridged) defines income in relevant part[6] as:

> "4 a: a gain or recurrent benefit that is usu. measured in money and for a given period of time, derives from capital, labor, or a combination of both, includes gains from transactions in capital assets, but excludes unrealized advances in value; commercial revenue or receipts of any kind except receipts or returns of capital -- see earned income, gross income, net income, unearned income; compare profit, wage b: the value of goods and services received by an individual in a given period of time -- compare wealth[.]"

The Oxford English Dictionary defines income in relevant part as:

> "That which comes in as the periodical produce of one's work, business, lands, or investments (considered in reference to its

---

[2] *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69, 131 S. Ct. 716, 723-24 (2011).
[3] 11 U.S.C. § 109(e).
[4] 11 U.S.C. § 101(30).
[5] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018).
[6] The court is excluding obsolete definitions of income that refer to the act of physically 'coming in' which are inapplicable given the context of 11 U.S.C. § 101(30).

> amount, and commonly expressed in terms of money); annual or periodical receipts accruing to a person or corporation; revenue."

A common theme of these definitions is that income is not an asset itself, but is instead revenue accruing on account of an asset or performance of a service over time.

Case law sheds some additional light on the meaning of the term 'income.' In a different context, the Bankruptcy Appellate Panel of the Ninth Circuit has recognized that there is a difference between an asset and income.[7] In *Burgie*, the debtors sold their house post-confirmation, and the question before the court was whether the proceeds of the sale constituted disposable income under 11 U.S.C. § 1325(b)(2) that had to be committed to payment of a modified chapter 13 plan.

As part of its analysis in *Burgie*, the Panel considered the differing nature and purposes of cases under chapter 7 and chapter 13. The determination of whether an item is an asset or income is an important one under the Bankruptcy Code because it dictates the appropriate use of that item in a particular bankruptcy case. The Panel noted that in chapter 7 cases, debtors turn over all their non-exempt prepetition assets to a chapter 7 trustee, but are entitled to keep all their post-petition income for their own future use. By contrast, in chapter 13 cases, debtors keep possession of their prepetition assets, but use their post-petition income to pay their creditors, typically over three to five years.[8]

The Panel held in *Burgie* that, although chapter 13 debtors may volunteer to use a prepetition asset to make payments on their plan, they cannot be compelled to do so. In determining what qualified as the debtor's disposable income in *Burgie*, the Panel held that "[t]he sale of a capital asset does not create 'disposable income' pursuant to § 1325" and instead concluded that "[t]he proper inquiry regarding the assets in question is whether they are income or income substitutes, not whether the debtor receives them in bulk or in installments."[9] The

---

[7] *McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 410-12 (9th Cir. BAP 1999).
[8] *Id.*, 239 B.R. at 410.
[9] *Id.*, 239 B.R. at 411.

Panel established a test that evaluates whether the item in question is a stream of payments, and if so, the item is income.[10]

The Ninth Circuit Bankruptcy Appellate Panel recently applied the *Burgie* rule to decide whether certain items were income in determining the eligibility of a person to be a debtor in chapter 13.[11] In *Richards*, a memorandum decision, the debtor sought to convert her chapter 7 case to chapter 13. The bankruptcy court denied the motion, in part on the grounds that the debtor was not eligible for chapter 13 because she did not have sufficient regular income to fund a plan. The Panel affirmed, holding that the debtor's proposed future sales of property, potential recoveries from pending litigation claims, and intent to foreclose upon a support judgment she held did not constitute regular income under the Bankruptcy Code for purposes of eligibility.[12]

Against this backdrop, the court will consider each item Mr. Frysinger relies upon to establish his eligibility to be a debtor in this chapter 13 case and determine if it is income.

### A. Bank Account Holding Funds from Personal Injury Settlement

At the time Mr. Frysinger filed his petition, he had already received all the scheduled payments from his personal injury settlement. The funds remaining from those payments were in a bank account. As of the petition date, the personal injury settlement payments were not revenue accruing on account of an asset or performance of service over time, or a stream of payments under *Burgie*. Mr. Frysinger had already received all the personal injury settlement payments he was entitled to receive, and the funds were simply held in a bank account that Mr. Frysinger owned. The court sees no reason to treat this bank account differently than any other bank account owned by a debtor—as an asset, not income. For these reasons, the court holds that the bank account containing funds from Mr. Frysinger's personal injury settlement is not income that could establish his eligibility to be a debtor in chapter 13.

---

[10] *Id.*, 239 B.R. at 410.
[11] *Richards v. Marschak (In re Richards)*, No. 8:21-BK-10635-ES, 2022 WL 884593 (9th Cir. BAP Mar. 24, 2022), appeal filed June 15, 2022.
[12] *Id.*, 2022 WL 884593, *8.

### B. Miscellaneous Sales Income

On his Schedule I, Mr. Frysinger listed income of $200 per month from miscellaneous sales. This was not listed as income from operation of a business on line 8a. of Schedule I, but instead was listed as "other monthly income" on line 8h. Accordingly, it appears that Mr. Fryinsinger's intent was to sell (presumably exempt) property that he owns to generate those sales.

In *Richards*, the Bankruptcy Appellate Panel held that a proposed future sale of debtor's property does not generate income for purposes of establishing a debtor's eligibility to file chapter 13. This court agrees. Applying that rule, this court holds that Mr. Frysinger's proposed miscellaneous sales do not establish his eligibility to be a debtor under chapter 13.

### C. Future Distributions from IRAs

Mr. Frysinger has voluntarily committed to make withdrawals from his IRAs as a source of income, and because he is 60 years old, he can do so without tax penalty. Thus, the question is squarely presented: do withdrawals from IRAs qualify as income for the purposes of establishing a person's eligibility to be a debtor under chapter 13?

The creditor, Ms. Legg, argues the answer is no, relying upon a case from the Bankruptcy Appellate Panel of the Eighth Circuit.[13] In *Zahn*, the Panel decided whether a debtor's IRA should be included in the calculation of the debtor's current monthly income under the means test. Although *Zahn* arose in a different context, *Zahn* is instructive because it addressed the question of whether an IRA is an asset or income. The Panel in *Zahn* considered the nature of IRAs, noting that the government encourages the opening of IRAs and that the accounts have tax advantages. The Panel acknowledged that the Bankruptcy Code requires the court to ignore the taxability of income in the means test. Ultimately, the Panel concluded that "we see no reason why distributions from IRA should be treated differently than withdrawals from savings accounts. Both should be excluded from current monthly income."[14]

---

[13] *Zahn v. Fink (In re Zahn)*, 391 B.R. 840, 845 (8th Cir. BAP 2008).
[14] *Id.*, 391 B.R. at 845.

Ms. Legg's argument also finds support in *Burgie*. In footnote 7 in *Burgie*, the Bankruptcy Appellate Panel of the Ninth Circuit, commented that "[f]unds in a retirement account are savings from prepetition income. They are thus necessarily not income or income replacement."[15] However, this comment was *dicta*, as the facts in *Burgie* did not implicate retirement funds in any way.

In response, Mr. Frysinger argues that Congress intended the term "regular income" to be read broadly. He points to the fact that, under the Bankruptcy Act, only individuals who were "wage earners" were eligible for reorganization, whereas under the Bankruptcy Code, Congress deliberately expanded the availability of chapter 13 to those individuals whose income was derived from other regular non-wage sources, such as welfare, pensions, investment income, and self-employment.[16] Mr. Frysinger distinguishes *Zahn*, pointing out that it arose in the context of determining current monthly income, and that disposable income, current monthly income, and regular income all have different meanings under the Bankruptcy Code.

This court, as well as one of the leading treatises,[17] recognizes that income may be defined differently for different purposes under the Bankruptcy Code. Accordingly, this court does not find the *dicta* in *Burgie* or the analysis in *Zahn* to be dispositive.

Instead, this court looks to the nature of Mr. Frysinger's IRAs, and whether those IRAs constitute income or an income substitute. In evaluating this question, this court finds most persuasive the United States Supreme Court's opinion in yet another bankruptcy context.[18]

In *Rousey*, the debtors claimed an exemption in their IRAs under 11 U.S.C. § 522(d)(10)(E). The chapter 7 trustee challenged the claim of exemption, arguing that the

---

[15] *Burgie*, 239 B.R. at 411.
[16] *In re Antoine*, 208 B.R. 17, 19 (Bankr. E.D.N.Y. 1997); *In re Varian*, 91 B.R. 653, 654 (Bankr. D. Conn. 1988) (citing legislative history); *In re Campbell*, 38 B.R. 193, 194-95 (Bankr. E.D.N.Y. 1984).
[17] Keith M. Lundin, LUNDIN ON CHAPTER 13, § 11.1, at ¶¶ 20-31, www.lundinonchapter13.com, (last visited December 21, 2022).
[18] *Rousey v. Jacoway*, 544 U.S. 320, 330-31, 125 S. Ct. 1561, 1568-70 (2005).

debtors' rights to receive payment from their IRAs was not a payment on account of their age and that their IRAs were not similar to stock bonus, pension, profitsharing, or annuity plans or contracts, as required by the statute for the debtors to qualify for the exemption.

In its analysis, the Supreme Court examined the nature and purpose of IRAs. The Court observed that the tax penalty for early withdrawal from IRAs substantially deters such withdrawals before retirement age.[19] The Court considered, and rejected, the trustee's argument that IRAs were different from stock bonus, pension, profitsharing, or annuity plans or contracts, because IRAs "allow complete access to deposited funds" and are not "deferred compensation."[20] Instead, the Court held that IRAs "provide a substitute for wages (by wages, for present purposes, we mean compensation earned as hourly or salary income), and are not mere savings accounts."[21] After considering the required minimum distribution requirements and the tax treatment of IRAs, the Court concluded that "all of these features show that IRA income substitutes for wages lost upon retirement and distinguish IRAs from typical savings accounts."[22]

The court does not see a reason to treat IRAs differently in this case.[23] Mr. Frysinger is 60 years old and not presently employed. Mr. Frysinger has the right to use the funds in his IRAs without tax penalty. Mr. Frysinger is free to choose to withdraw the funds in his IRAs and use those funds as an income substitute for wages. Based on Mr. Frysinger's commitment to make withdrawals from his IRAs to use as income, this court finds that Mr. Frysinger is eligible to be a debtor in this chapter 13 case.

---

[19] *Id.*, 544 U.S. at 327, 125 S. Ct. at 1567.
[20] *Id.*, 544 U.S. at 329, 125 S. Ct. at 1568.
[21] *Id.*, 544 U.S. at 329, 125 S. Ct. at 1568.
[22] *Id.*, 544 U.S. at 331-32, 125 S. Ct. at 1569.
[23] The court's holding is limited to the facts of this case: a debtor who is eligible to withdraw funds from an IRA without tax penalty, and who both voluntarily chooses and commits to make distributions from the debtor's IRA as a source of income.

## Conclusion

For the reasons set forth above, the court holds that Mr. Frysinger's proposed withdrawals from his IRAs should be treated as income, and that, based on the IRA income, Mr. Frysinger is eligible to be a debtor under chapter 13. Ms. Legg's remaining concerns regarding Mr. Frysinger's good faith and the feasibility of Mr. Frysinger's proposed plan are reserved for future proceedings.

### # # #

cc:   Laura L. Donaldson

  Arnold H. Wuhrman